**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**KEITH AKINS**                                                                    **PLAINTIFF**

**VS.**                                        **4:19-CV-00420-BRW**

**MARK ESPER, SECRETARY OF THE ARMY**                          **DEFENDANT**

## ORDER

Plaintiff filed a complaint on June 17, 2019.  Both parties filed briefs on the issues and
assert that the case is ripe for decision.[1]  For the reasons stated below, the final decision of the
Army Board of Correction of Military Records (ABCMR) is AFFIRMED and Plaintiff's
Complaint is DISMISSED.

## I.    BACKGROUND

On July 8, 1991, Plaintiff was discharged from the United States Army after having
completed  two years, five months, and five days of active service.[2]  The discharge stemmed
from misconduct, where Plaintiff was absent without leave ("AWOL") from February 4, 1991
until he was apprehended on June 6, 1991.[3]  After conferring with counsel and considering his
legal options, Plaintiff requested a discharge instead of court-martial.[4]  On June 26, 1991, United
States Army authorities approved his discharge with an "other than honorable" characterization
of his service.[5]

---

[1]Doc. Nos. 11, 13.

[2]Doc. No. 2, p. 7.

[3]*Id.* at 6.

[4]*Id.* at 7.

[5]*Id.*

Since then, Plaintiff has attempted on three occasions to have his discharge upgraded to an "honorable" discharge.[6]  In 1993, Plaintiff applied to the Army Discharge Review Board ("ADRB") to upgrade his discharge.  The ADRB denied his request based on a lack of supporting evidence.  On July 8, 2008, Plaintiff, petitioned the Army Board of Correction of Military Records ("ABCMR") for an upgrade.  On October 2, 2008, the ABCMR denied his request.  In 2016, Plaintiff filed an application for reconsideration of his petition based on new guidance memorandums issued by the Department of Defense.[7]  On January 8, 2019, the ABCMR, again, denied his petition.  Plaintiff appeals from this latest denial.

Plaintiff alleges the ABCMR decision was arbitrary and capricious because both the ABCMR and the advisory opinion used in its review failed to apply the current guidelines for considering change of discharge requests.  He also alleges the ABCMR failed to base its conclusions on substanial evidence.[8]  Plaintiff seeks to have the characterization of his service upgraded to a "general" discharge, or, alternatively, to remand the case back to the ABCMR for further action.

Defendant asserts the ABCMR specifically considered the timing of the event, the length of the AWOL, and the conclusions of the advisory opinion that had reviewed Plaintiff's mental evaluations.[9]  Defendant contends the ABCMR properly applied the appropriate guidelines in its review and substanial evidence supports the ABCMR's findings.

---

[6]Doc. No. 11, pp. 2-3.

[7]*Id.* at 3.

[8]Doc. No. 2, p. 3.

[9]*Id.*, p. 10.

## II.    STANDARD OF REVIEW

The authority for reviewing ABCMR's actions rests in the Administrative Procedures Act.[10]  The Secretary of a Army has the  statutory authority to correct any military record of the Secretary's department when the Secretary considers it necessary to "correct an error or remove an injustice."[11]  Here, the ABCMR's decision is subject to judicial reversal if it is "arbitrary, capricious or unsupported by substantial evidence."[12]  "The arbitrary and capricious standard is a narrow one that reflects the deference given to agencies' expertise within their respective fields."[13]  If the ABCMR provided a rational explanation for its decision, I cannot overrule it.[14]

The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[15]  I note that "substantial evidence is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions" does not indicate that substantial evidence fails to support the ABCMR's findings.[16]

A  review of ABCMR action is limited to deciding whether its "decision making process was deficient, not whether the decision was correct."[17]  A judicial review of a military agency's

---

[10]5 U.S.C. §§ 701-06.

[11]10 U.S.C. § 1552(a)(1).

[12]5 U.S.C. § 706(2)(A) & (E); *Chappell v. Wallace*, 462 U.S. 296, 303 (1983); *Henry v. U.S. Dep't of Navy*, 77 F.3d 271, 272 (8th Cir. 1996).

[13]*Henry*, 77 F.3d at 272.

[14]*Nat'l Wildlife Federation v. Whistler*, 27 F.3d 1341, 1344 (8th Cir. 1994).

[15]*Richardson v. Perales*, 402 U.S. 389, 401 (1971).

[16]See *Baker v. Secretary of Health and Human Services*, 955 F.2d 552, 554 (8th Cir. 1992).

[17]*Watson v. Arkansas Nat. Guard*, 886 F.2d 1004, 1011, n.16 (8th Cir. 1989).

ruling "must be extremely deferential because of the confluence of the narrow scope of review under the APA and the military setting."[18]

## III.   DISCUSSION

Plaintiff alleges that the ABCMR's decision to deny his petition was deficient because it relied on a faulty advisory opinion provided by Dr. Lavin, an Army Review Boards Agency medical advisor.  Plaintiff contends that nothing in the ABCMR's conclusions indicate that it independently considered his new evidence included with the petition.  Instead, the ABCMR requested an advisory opinion from Dr. Lavin, as it may do under the applicable guidelines, and relied on the opinion for its analysis of the mental health aspect of the review.[19]  Plaintiff alleges that Dr. Lavin failed to correctly apply the current guidance set forth in both the Hagel and Kurta memorandums[20] and the rules provided  in 10 U.S.C. § 1553(d)(3)(A)(ii).  This set of guidance allows for "liberal consideration" of mental health conditions under certain circumstances when reviewing a change of discharge characterization request.[21]

---

[18]*Henry*, 77 F.3d at 272 (citations omitted).

[19]Doc. No. 13-1, p. 4.

[20]Secretary of Defense, Chuck Hagel, issued the "Hagel Memo" on September 3, 2014.  This memorandum provided guidance to military review boards when considering discharge upgrade requests by veterans claiming PTSD.  It was issued to address the needs of Vietnam veterans.  The new guidance expanded the ability of veterans with previously unrecognized cases of PTSD to seek discharge upgrades.  The Hagel Memo mandated "liberal consideration" to a finding that PTSD existed at the time of service.  On August 25, 2017, the Under Secretary of Defense for Personnel and Readiness, A.M. Kurta, issued the "Kurta Memo" providing clarification for military review boards considering requests by veterans for modification of their discharge.  This memo expanded the "mitigating conditions" that review boards could consider beyond PTSD related conditions.  The guidance added traumatic brain injury, general mental health conditions, sexual assault, and sexual harassment as conditions to be considered in the discharge review.  The Kurta Memo provides a general framework for deciding whether a condition qualifies as a mitigating condition for review purposes.

[21]Doc. No. 11, pp. 3-4.

Plaintiff further alleges that Dr. Lavin failed to consider key pieces of relevant evidence when formulating his opinion.[22]  Since the ABCMR relied on Dr. Lavin's advisory opinion, and allegedly failed to perform its own analysis, Plaintiff argues that ABCMR's decsion is arbitrary and capricious and not supported by substantial evidence.  I disagree.

### A.    ABCMR Properly Applied Review Guidelines

The ABCMR denied Plaintiff's petition based on the record from his previous petition and documentation that the Plaintiff provided with his application:  a State of Arkansas mental diagnostic evaluation from 2009 by Dr. Moore and a report of psychological evaluation from Dr. J. M.[23]  Statutory guidelines provide that the ABCMR must "review medical evidence of the Secretary of Veterans Affairs or a civilian health care provider that is presented by the former member."[24]  The ABCMR obtained an advisory opinion from Dr. Lavin who reviewed the materials provided to the ABCMR in Plaintiff's petition.

Dr. Lavin acknowledged that Dr. J.M.'s mental health evaluation diagnosed Plaintiff with depression, a possible mixed personality disorder, and substance abuse problems.[25]  It also acknowledged that Dr. J.M. concluded these mental conditions combined with his brother's murder likely triggered Plaintiff's misconduct.[26]  However, Dr. Lavin concluded that even though these circumstances possibly explained Plaintiff's actions, the evaluation did not identify a "mitigating condition" for Plaintiff's misconduct.[27]

---

[22]*Id.* at 7.

[23]Doc. No. 2, p. 6.

[24]10 U.S.C. § 1553(d)(3)(A)(i).

[25]Doc. No. 2, p. 8.

[26]*Id.*

[27]*Id.*

The parties' disagree on the proper definition of a "mitigating condition" under the current guidelines.  Plaintiff argues that a broad interpretation of mental disorder is required under the current guidance.  Plaintiff contends that Dr. Lavin's recognition and apparent disregard for Plaintiff's depressive mental disorders found in Dr. J.M.'s and Dr. Moore's reports, demonstrates an unexplainable inconsistency when viewed under the applicable guidelines.[28]

The Hagel Memo, issued in 2014, broadened the scope of military review boards' ability to consider change of discharge characterization requests.[29]  It provided that "for every application of upgrade made by a veteran who claims to have suffered from PTSD, the review boards must give 'liberal consideration' to cases where service records document any symptom of PTSD, despite having no diagnosis available, or where a veteran received a subsequent PTSD diagnosis that is deemed to be service-connected."[30]  Military review boards were ordered to view these conditions as "mitigating factors" for misconduct that occurred during active service.[31]

The Kurta Memo, issued in 2017 to clarify the guidance provided in the Hagel Memo, broadened the procedures available to consider mental health problems connected to a former service member's discharge.[32]  The Kurta memo explicitly mentions PTSD, TBI, sexual assault, and sexual harassment as potential mitigating conditions.[33]  This list of mental health conditions

---

[28]Doc. No. 11, p. 6.

[29]Doc. No. 13-1.

[30]*Id.* at 1.

[31]*Id.* at 3.

[32]Doc. 13-2.

[33]*Id.* at 2.

was not exclusive, but only recognized them as mental health conditions that should receive consideration as mitigating conditions.[34]

As Plaintiff points out, the Kurta and Hagel memorandums have been codified in 10 U.S.C. § 1553(d)(3)(A)(ii).  However, the statute only provides for the ABCMR to "review the case with liberal consideration to the former member that *post-traumatic stress disorder* or *traumatic brain injury* potentially contributed to the circumstances resulting in the discharge or dismissal or to the original characterization of the member's discharge or dismissal."[35]

Dr. Lavin focused on the lack of a PTSD diagnosis in Plaintiff's mental health evaluation.[36]  Dr. Lavin concluded that the mental conditions found in Dr. J.M.'s report did not meet the standard for a mitigating condition.  Plaintiff concedes that "it is probably correct that he did not have PTSD."[37]  Instead, Plaintiff argued that the mental disorders diagnosed by Dr. J.M. provided adequate grounds for upgrade as a qualifying mental health condition. The repeated specific reference to PTSD throughout the guidance memos and the controlling statute indicate that service related PTSD should receive heightened consideration.  Other mental conditions are not excluded, but a connection must be shown from the mental condition to the misconduct.

While it is apparent that any type of mental disorder can be considered under the review board guidance, "'liberal consideration' is not required for cases involving pre-existing conditions which are not determined to have been aggravated by military service."[38]  Here, Dr. Lavin reviewed Dr. Moore's and Dr. J.M.'s evaluations and determined that Plaintiff's

---

[34]*Id.* at 5.

[35]U.S.C. § 1553(d)(3)(A)(ii) (emphasis added).

[36]Doc. No. 2, p. 8.

[37]*Id.* at  p. 9.

[38]Doc. No. 13-2, p. 2.

diagnosed mental health conditions typically begin in early childhood.[39]  Plaintiff's stated reason for going AWOL was the death of his brother.[40]  Clearly, Dr. Lavin and the ABCMR determined that Plaintiff's mental condition was not aggravated by his military service.  Plaintiff's condition was aggravated by a non-military related event and did not warrant liberal consideration with the attendant less stringent causal connection requirement.

The type of mental disorders at issue in the review, required a causal connection between the mental disorder and the misconduct to form a "mitigating condition."[41] The review procedure set forth in the Hagel memo required the ABCMR to "carefully consider[] the likely causal relationship of the symptoms to the misconduct."  A goal of the Kurta memo was to "ensure the causal relationship of possible symptoms and discharge basis is fully considered."[42] The controlling statute requires the mental condition to "potentially contribute[] to the circumstances" that led to the misconduct.[43]

Plaintiff argues that a finding of a mental health problem during his time in the Army should automatically afford him an upgrade in his discharge characterization.  That is not the case.  The "liberal and sympathetic guidance" does not "mandate relief, but provided principles and standards the review board should use in making its determination."[44]

Here, the record shows that the ABCMR followed the appropriate procedures and applied the principles in accordance with the guidelines.  The ABCMR considered the materials submitted by the Plaintiff.  Further, the ABCMR obtained an advisory opinion on Plaintiff's

---

[39]Doc. No. 2, p. 8.

[40]*Id.* 2, p. 4.

[41]Doc. No. 13-2, p.5.

[42]*Id.* at p. 5.

[43]U.S.C. § 1553(d)(3)(A)(ii).

[44]Doc. No. 13-3.

mental health condition based on the information he submitted.  The advisory opinion considered the type of mental health problems and found that the circumstances demonstrated a lack of a causal connection between his condition and the misconduct.  Dr. Lavin concluded that the condition did not qualify as a mitigating factor.  The ABCMR reviewed Plaintiff's purported cause of his misconduct within this framework.

These facts viewed in conjunction with the findings of the advisory opinion demonstrate that the ABCMR applied the appropriate principles and guidelines in this case.  The ABCMR's decision was not arbitrary and capricious.

### B.      ABCMR's Decision Supported By Substanial Evidence

Plaintiff contends that the ABCMR failed to base its decision on substanial evidence.  Plaintiff argues that the ABCMR did not consider the evidence he offered.  Plaintiff points to several pieces of evidence not specifically mentioned in the ABCMR's decision.[45]  For example, Plaintiff contends that the decision never discussed Dr. Moore's August 16, 2009 evaluation and never reconciled the alleged inconsistencies in the advisory opinion by Dr. Lavin regarding Plaintiff's mental disorders.[46]  Plaintiff contends that the absence of specific references in the decision demonstrates a lack of consideration of the issues.

Plaintiff further argues that the ABCMR's decision was not supported by substantial evidence because it relied on the Dr. Lavin's advisory opinion.[47]  He contends that because Dr. Lavin did not actually examine him, Dr. Lavin's conclusions cannot be considered substantial evidence.

Essentially, Plaintiff complains about the form of the ABCMR's decision rather than its process or the actual evidence it used in making its decision.  The ABCMR stated that it

---

[45]Doc. No. 11, p. 6.

[46]*Id.*

[47]*Id.* at 7.

reviewed the Record of Proceedings from the initial denial and all supporting documents offered by the Plaintiff.[48]  The Record of Proceedings from the previous review included Plaintiff's military records summarized in the previous proceeding.[49]  The supporting documents included Dr. Moore's evaluation in 2009 and Dr. J.M.'s evaluation in 2016.[50]

The absence of direct explanations for each issue, or citations to specific evidence in ABCMR's discussion does not necessarily lead to the conclusion that the evidence was not considered.  Furthermore, Dr. Lavin's role was to review the medical evaluations and provide the reviewing board with his opinion as to the applicability of the standards to Plaintiff.[51]  That is what occurred here.  Nothing required Dr. Lavin to personally examine Plaintiff.

The ABCMR reviewed the record and Plaintiff's additional evidentiary submissions.  In its decision, the ABCMR did not explain its analysis for each issue.  Nonetheless, the ABCMR supplied rational explanation for its decision.

The ABCMR's decision is supported by substantial evidence.  Here, the administrative record before the ABCMR showed that Plaintiff's purported reason for going AWOL in February 1991 was the murder of his brother in November of 1989.  The ABCMR considered the timing of the two occurrence (more than a year apart) and the length that Plaintiff was AWOL (122 days).  The ABCMR also considered Dr. Lavin's advisory opinion that found Plaintiff's mental condition did not qualify as a mitigating factor under the existing guidelines.  Therefore,

---

[48]Doc. No. 2, p. 10.

[49]*Id.* at 6.

[50]*Id.*

[51]Doc. No. 13-1, p. 4.

the ABCMR had adequate grounds for its determination that the evidence presented by Plaintiff did not demonstrate the existence of a probable error or injustice.

I am not in a position to reconsider the evidence in the record and draw my own conclusions.  The fact that a reasonable person might have reached a different conclusion is insufficient to overturn the ABCMR's decision.[52]  The ABCMR's decision must be upheld as long as there is substantial evidence to support its action and there is no other indication that its decision was arbitrary or capricious. That is the case here.

## CONCLUSION

For the reasons stated above, the final decision of the Army Board of Correction of Military Records is AFFIRMED and Plaintiff's Complaint is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED this 27th day of August, 2020.

Billy Roy Wilson
UNITED STATES DISTRICT JUDGE

---

[52] See *Whistler*, 27 F.3d at 1344.